UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WADE ANTHONY MORMAN,

        Plaintiff,

    v.

MICHAEL DYER, et al.,

        Defendants.

Case No. 16-cv-01523-SI

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

Re: Dkt. No. 1

Wade Anthony Morman, an inmate currently incarcerated at the San Quentin State Prison, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A.

**BACKGROUND**

The complaint has a proof of service stating that Morman mailed it to the court on March 18, 2016. Under the prisoner mailbox rule, the complaint is deemed filed as of the date a *pro se* prisoner gives a document to prison officials to mail to the court. *Douglas v. Noelle*, 567 F.3d 1103, 1108-09 (9th Cir. 2009). Morman's complaint is deemed filed as of March 18, 2016, the day he gave it to prison officials to mail to the court.

The complaint alleges claims based on events and omissions that occurred in 2011 and early 2012. There are thirty claims listed in the complaint, covering a wide range of alleged misconduct (e.g., a guard gave him a "wedgy" during a search in August 2011, *see* Docket No. 1 at 6; a guard "verbally offend[ed] and mean-mug[ged]" him in September 2011, *id.* at 9; staff wrongfully put him in administrative segregation in about October 2011; staff improperly transferred him from CTF-Soledad to San Quentin in November 2011; and staff's responses to his

1    inmate appeals were improper in 2011 and early 2012).

2           The only events and omission that allegedly occurred four years or less before Morman

3    mailed his civil rights complaint to the court are that some prison officials denied his inmate

4    appeals as late as April 2012. *See id.* at 23, 25-26.

5

6                                          **DISCUSSION**

7           A federal court must engage in a preliminary screening of any case in which a prisoner

8    seeks redress from a governmental entity or officer or employee of a governmental entity.  See 28

9    U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any

10   claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or

11   seek monetary relief from a defendant who is immune from such relief.  *See id*. at §

12   1915A(b)(1),(2).  *Pro se* complaints must be liberally construed.  *See Hebbe v. Pliler*, 627 F.3d

13   338, 342 (9th Cir. 2010).

14          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a

15   right secured by the Constitution or laws of the United States was violated, and (2) that the

16   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

17   U.S. 42, 48 (1988).

18          There are several problems with the complaint.  Leave to amend is granted so that Morman

19   may attempt to cure the deficiencies in his complaint.

20

21   A.     Statute of Limitations Problem

22          A statute of limitations problem appears to exist for many of the claims in the complaint.

23   Section 1983 does not contain its own limitations period, so the court looks to the limitations

24   period of the forum state's statute of limitations for personal injury torts.  *See Elliott v. City of*

25   *Union City*, 25 F.3d 800, 802 (9th Cir. 1994).  California's statute of limitations period for

26   personal injury torts is now two years, and the statute of limitations period for § 1983 claims is

27   two years.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code

28   § 335.1; *Elliott*, 25 F.3d at 802.  It is federal law, however, that determines when a cause of action

United States District Court
Northern District of California

1    accrues and the statute of limitations begins to run in a § 1983 action. *Wallace v. Kato*, 549 U.S.

2    384, 388 (2007); *Elliott*, 25 F.3d at 801-02. Under federal law, a claim generally accrues when the

3    plaintiff knows or has reason to know of the injury which is the basis of the action. *See Elliott*, 25

4    F.3d at 802. The statute of limitations period generally begins when a plaintiff has knowledge of

5    the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury."

6    *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

7            Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two

8    years, but only for a plaintiff who is in prison "for a term less than for life" and is under the

9    disability at the time the cause of action accrues. *See* Cal. Civ. Proc. Code § 352.1.

10           The limitations period may be subject to equitable tolling. Under California law, equitable

11   tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal

12   remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries

13   or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison*

14   *v. California*, 21 Cal. 3d 313, 317 (1978)). Thus, in an appropriate case, the statute of limitations

15   might be tolled for time spent pursuing a remedy in another forum before filing the claim in

16   federal court. The limitations period also may be tolled for the period in which a prisoner

17   exhausted administrative remedies for his inmate appeals pertaining to a claim. *See Brown v.*

18   *Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005).

19           Although the statute of limitations is an affirmative defense that normally may not be

20   raised by the court sua sponte, it may be grounds for sua sponte dismissal of an *in forma pauperis*

21   complaint where the defense is complete and obvious from the face of the pleadings or the court's

22   own records. *See Franklin v. Murphy*, 745 F.2d 1221, 1228-30 (9th Cir. 1984). That is the

23   situation here: the defense appears complete and obvious from the face of the complaint because

24   this action was filed more than four years after acts and omissions alleged in the complaint

25   occurred. The only events and omissions that occurred less than four years before the filing of the

26   complaint were that some of the inmate appeals were decided within that period, but the handling

27   and denial of those claims does not support any liability under § 1983 for a due process violation

28   for the reasons stated below.

United States District Court
Northern District of California

3

1          In his amended complaint, or in a separate filing that accompanies the amended complaint,

2    Morman must explain why his claims based on events and omission that occurred before

3    March 18, 2012 are not barred by the statute of limitations.  He must submit any argument he has

4    to show that the statute of limitations does not bar each of the claims in this action for each claim

5    that is based on an event or omission occurring before March 18, 2012.  Because the limitations

6    period accrues on different dates for incidents that occur on different dates, and the tolling events

7    may be different for each claim, Morman must present his statute of limitations argument on a

8    claim-by-claim basis rather than present a single statute of limitations argument for all his claims.

9

10    B.      The Claims Alleged

11          The other major problem with the complaint is that it does not allege enough facts about

12    the claims for the court to determine that any claim is stated.  Although the complaint is 28 pages

13    long, most of that length is due to Morman's conclusory allegations and legal jargon that do little

14    to provide notice of what his claims actually are.  A complaint must contain "a short and plain

15    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

16    "Specific facts are not necessary; the statement need only . . . give the defendant fair notice of

17    what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93

18    (2007) (citations and internal quotation marks omitted).  Although a complaint "does not need

19    detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his

20    'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

21    elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to

22    relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

23    (citations omitted).  A complaint must proffer "enough facts to state a claim to relief that is

24    plausible on its face."  *Id.* at 570.

25          Facts must be alleged so that the court can screen the complaint under § 1915A and

26    determine whether a claim for relief is stated.  And, if the case proceeds beyond the initial review

27    stage, the defendants need to have notice of the facts so that they can frame a response to the

28    plaintiff's claims.  This latter point is particularly important in this case, where the events and

United States District Court
Northern District of California

United States District Court<br>Northern District of California

1   omissions occurred so long ago.  In the following paragraphs, the court will identify those claims

2   that are legally meritless, and also will describe the elements of other claims that might be able to

3   be alleged in an amended complaint if Morman alleges facts plausibly showing the existence of

4   each of those elements in his amended complaint.

5          The "Wedgy"[1]:  Morman alleges that C/O Quintero "did a wedgy" to him during a search

6   in late August 2011.  Docket No. 1 at 6.  He then asserts claims against several other people

7   because they "willfully and maliciously did: enjoin C/O Quintero in his doing a wedgy" and

8   "verbally and offended and humiliated" Morman.  *Id.* at 7. He also alleges that their behavior was

9   retaliatory. The incident, as described, is too trivial to amount to a constitutional violation.

10         An Eighth Amendment violation may occur when prison officials "maliciously and

11   sadistically use force to cause harm, but "not every malevolent touch by a prison guard or official

12   gives rise to an Eighth Amendment violation."  *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).  "The

13   Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

14   constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of

15   a sort 'repugnant to the conscience of mankind.'"  *Id.* (citation omitted); *see, e.g., Watison v.*

16   *Carter*, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (no Eighth Amendment violation against officer

17   who was alleged to have rubbed his thigh against plaintiff's thigh while plaintiff was on toilet and

18   to have begun smiling before leaving cell laughing); *Berryhill v. Schriro*, 137 F.3d 1073, 1076

19   (8th Cir. 1998) (no Eighth Amendment violation where employees briefly touched inmate's

20   buttocks with apparent intent to embarrass him, and touching was unaccompanied by any sexual

21   comments or banter).  The allegation that a correctional officer gave Morman a wedgie fails to

22   state a claim under § 1983 as this is the sort of trivial use of force that falls below constitutional

23   recognition.  It follows, then, that the claims against the other correctional officers who merely

24   "enjoin[ed]" the correctional officer giving the wedgie also fail to state a claim under § 1983.

25

26         [1] The definition from the Oxford English Dictionary most likely to apply to the situation
defines a "wedgie" as a slang word originating in the United States that refers to the "act of pulling
27   the cloth of a person's underwear, trousers, etc., tightly between the buttocks, esp. a practical joke;
any positioning of a person's underwear, pants etc., resembling the result of such a pulling."
28   Oxford English Dictionary Online, "wedgie," n.2, at http://www.oed.com/view/Entry/247021 (last
visited on Sept. 20, 2016).

1           Morman's complaint implies that the correctional staff verbally offended him.  As the

2 Ninth Circuit has explained, "'the exchange of verbal insults between inmates and guards is a

3 constant, daily ritual observed in this nation's prisons' of which 'we do not approve,' but which do

4 not violate the Eighth Amendment." *Watison*, 668 F.3d at 1113 (quoting *Somers v. Thurman*, 109

5 F.3d 614, 622 (9th Cir.1997) (internal quotation marks omitted).)  Leave to amend is granted so

6 that Morman may attempt to allege facts plausibly suggesting that the conduct of the defendants

7 went beyond non-actionable verbal harassment.

8      Morman alleges that the wedgie was done or encouraged for retaliatory purposes, but alleges

9 no facts suggestive of retaliation.  Within the prison context, a viable claim of First Amendment

10 retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

11 against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

12 chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

13 advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)

14 (footnote omitted). Leave to amend is granted so that Morman may attempt to allege facts

15 plausibly showing retaliation.

16         <u>Sensitive Information</u>:  Morman alleges that C/O Lee found information and "use[d] it to

17 oppress the plaintiff's right to privacy and security against misuse of information where he used it

18 to attempt to cause the plaintiff [] to be oppressed in his right to be secure against threats of

19 violence and intimidation by himself, staff, and inmates; use information to oppress plaintiff's

20 rights to be secure from being targeted for violence based on being in the category of California

21 Penal Code § 290 inmates and perceived as a "J-CAT." Docket No. 1 at 9.  Elsewhere he alleges

22 that C/O Ponce referred to Morman as a "J-CAT" in writing but does not identify what that

23 writing was or who saw it that put Morman in danger.  Nor does Morman explain why being

24 identified as a "J-CAT" inmate would put him in any danger.

25      The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison and

26 jail officials take reasonable measures for the safety of inmates.  *Farmer v. Brennan*, 511 U.S.

27 825, 833-34 (1994).  A prison or jail official violates the Eighth Amendment only when two

28 requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the

United States District Court
Northern District of California

6

1    official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834. To be liable

2    in a failure-to-prevent-harm situation, the official must know of and disregard an excessive risk to

3    inmate safety. *See id.* at 837.  Morman has not alleged sufficient facts for the court to determine

4    that a claim has been stated for deliberate indifference to the inmate's safety.  In his amended

5    complaint, Morman must explain what C/O Lee learned and how he used that information to cause

6    a violation of Morman's constitutional rights to state a plausible claim for relief.  Morman also

7    should explain what physical harm, if any, he suffered as a result of the disclosure of this

8    information more than four years ago.

9       Being "Mean-Mug[ged]":  Morman alleges that C/O Lee verbally offended and "mean-

10   mug[ged]" him in September 2011.  Docket No. 1 at 9.  As explained earlier, verbal harassment is

11   not actionable under § 1983.  The addition of the allegation that the defendant "mean-mug[ged]"

12   Morman -- which, in context, appears to mean that the correctional officer stared or glared at

13   Morman -- does not elevate this event to a constitutional violation.  This claim is dismissed

14   without leave to amend.

15      The Searches:  Morman alleges that he and his cell were subjected to unlawful searches in

16   September 2011.  He does not provide enough facts for the court to determine whether any of his

17   rights may have been violated.  In his amended complaint, Morman must allege facts explaining

18   what occurred during the searches that caused a violation of his constitutional rights.

19      Administrative Appeals:  There is no federal constitutional right to a prison administrative

20   appeal or grievance system for California inmates.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th

21   Cir. 2003).  Prison officials are not liable for a due process violation for simply failing to process

22   an appeal properly, denying an inmate appeal or granting an inmate appeal. A claim under § 1983

23   for a due process violation is not stated against any defendant for a denial of plaintiff's inmate

24   appeals.  The due process claims against defendants for mishandling or denying Morman's inmate

25   appeals are dismissed without leave to amend.

26      Disciplinary or Administrative Segregation:  An inmate has a federally-protected right to

27   due process if he is deprived of a liberty interest of real substance. *See Sandin v. Conner*, 515

28   U.S. 472, 477-87 (1995).  An interest of "real substance" will generally be limited to freedom

1   from restraint that imposes an "atypical and significant hardship on the inmate in relation to the

2   ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at

3   484, 487.   A prisoner complaining about his placement in administrative segregation and/or

4   disciplinary segregation must first allege facts showing that he was deprived of a protected liberty

5   interest, i.e., suffered an atypical and significant hardship (e.g., a long-term SHU placement) or

6   lost time credits that will inevitably affect the duration of his sentence.[2]   But identifying a

7   constitutionally-protected liberty interest is only the first step; the prisoner also must identify the

8   procedural protections not provided to him when he was deprived of that constitutionally-

9   protected liberty interest to state a claim.

10   When prison officials initially determine whether a prisoner is to be segregated for

11   *administrative* reasons, due process requires that prison officials hold an informal nonadversary

12   hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the

13   charges against him or the reasons segregation is being considered, and allow the prisoner to

14   present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part*

15   *on other grounds by Sandin*, 515 U.S. 472.   Due process also requires that there be some evidence

16   to support the prison officials' decision.   *Superintendent v. Hill*, 472 U.S. 445, 455 (1985);

17   *Toussaint*, 801 F.2d at 1104-05.   The procedural protections required in a prison *disciplinary*

18   proceeding include written notice, time to prepare for the hearing, a written statement of decision,

19   allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the

20   accused where the inmate is illiterate or the issues are complex. *See Wolff v. McDonnell*, 418 U.S.

21   539, 564-67 (1974).   There also must be some evidence to support the decision, *see*

22   *Superintendent v. Hill*, 472 U.S. at 454 (1985), and the information that forms the basis for prison

23   disciplinary actions must have some indicia of reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-

24

25   ──────────

   [2] If a prisoner asserts that he was deprived of a constitutionally-protected liberty interest
26   because prison officials imposed discipline that caused him to lose time credits and extended his
   stay in prison, he may have a due process claim, but would need to assert such a claim in a petition
27   for writ of habeas corpus rather than a civil rights complaint.   If success on a claim would
   inevitably affect the duration of the prisoner's confinement -- as may be the case where the
28   prisoner claims that time credits were wrongfully taken away and, if restored, would result in his
   earlier release from prison -- that claim must be brought in a habeas action.   *See Nettles v.*
   *Grounds*, No. 12-16935, slip op. at 9 (9th Cir. July 26, 2016) (*en banc*).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   05 (9th Cir. 1987).   The due process claims based on Morman's placement in administrative

2   segregation and/or disciplinary segregation are dismissed with leave to amend.

3          <u>Falsified Documents</u>:   Morman alleges that prison officials falsified documents, but does

4   not allege what documents were falsified, and what the alleged falsities were.   He must allege

5   facts, not mere conclusions, showing what the false information consisted of and how it affected

6   him.

7          <u>Transfer</u>:   Morman complains that his transfer from one prison to another prison was

8   wrongful.   Prisoners have no constitutional right to incarceration in a particular institution.   *See*

9   *Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

10   A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may

11   generally confine or transfer him to any of its institutions, to prisons in another state or to federal

12   prisons, without offending the Constitution.   *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.

13   1985) (intrastate prison transfer does not implicate Due Process Clause).   "It is well settled that the

14   decision where to house inmates is at the core of prison administrators' expertise."   *McKune v.*

15   *Lile*, 536 U.S. 24, 39 (2002).   The claim that the transfer violated due process is dismissed.   A

16   claim might be stated for retaliation when a transfer is done for retaliatory purposes, but Morman

17   has not alleged facts showing that any defendant retaliated against him.   *See Rhodes*, 408 F.3d at

18   567-68.

19

20                               **CONCLUSION**

21        Plaintiff's complaint is dismissed with leave to amend.   Plaintiff must file an amended

22   complaint no later than **October 31, 2016**, and must include the caption and civil case number

23   used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is

24   cautioned that his amended complaint must be a complete statement of his claims, except that he

25   does not need to allege any claim that has been dismissed without leave to amend.   *See Lacey v.*

26   *Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).   Plaintiff also must address the

27   statute of limitations problem in his amended complaint or in a separate document filed at the

28   same time he files his amended complaint.   Failure to file an amended complaint by the deadline

United States District Court
Northern District of California

1    will result in the dismissal of this action.

2           **IT IS SO ORDERED**.

3    Dated:   September 26, 2016

4    _____

5    SUSAN ILLSTON
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28